IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAWRENCE CRILLEY and MARCY KOLTUN-CRILLEY, | ) ) ) | CIVIL NO. 12-00081 LEK-BMK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| BANK OF AMERICA, N.A.; BAC HOME LOAN SERVICING, LP; JOHN AND MARY DOES 1-10, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS COMPLAINT FILED ON JANUARY 5, 2012**

On February 15, 2012, Defendant Bank of America, N.A.,
on its own behalf and as successor-by-merger to BAC Home Loans
Servicing, LP ("Defendant")[1] filed the instant Motion to Dismiss
Complaint Filed on January 5, 2012 ("Motion"). Plaintiffs
Lawrence Crilley and Marcy Koltun-Crilley ("Plaintiffs") filed
their memorandum in opposition on March 23, 2012, and Defendant
filed its reply on March 30, 2012. This matter came on for
hearing on April 16, 2012. Appearing on behalf of Defendant was
Patricia McHenry, Esq., and appearing on behalf of Plaintiffs was
James Fosbinder, Esq. After careful consideration of the Motion,
supporting and opposing memoranda, and the arguments of counsel,

---

[1] When necessary to distinguish between the two entities,
the Court will refer to Bank of America, N.A. as "BOA" and to BAC
Home Loans Servicing, LP as "BAC".

Defendant's Motion is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as Plaintiffs' request for an order enjoining the foreclosure sale of the property is DISMISSED WITHOUT PREJUDICE, and the Motion is DENIED in all other respects.

## BACKGROUND

Plaintiffs filed the instant action on January 5, 2012 in state court. Defendant removed the action on diversity jurisdiction.

According to the Complaint, in February 2003, Plaintiffs obtained a $520,000 loan from Countrywide Home Loans, Inc., secured by a Mortgage on 2962 Kauhale Street, Kihei, Hawai`i ("the Property").[2] On December 28, 2009, Plaintiffs received a solicitation from BAC promoting the federal government's Home Affordable Modification Program ("HAMP"). Plaintiffs completed an on-line loan modification application. [Complaint at ¶¶ 15-16.]

On January 4, 2010, BAC personnel contacted Plaintiffs by telephone. During the call, Mrs. Crilley told each person she spoke to that they would exhaust the last of their savings after approximately two more mortgage payments. One of the people to whom Mrs. Crilley spoke identified himself as Brian and

---

[2] The Mortgage securing the loan is attached to the Complaint as Exhibit 1.

interviewed her for approximately an hour, taking Plaintiffs'
financial information.  Brian informed Mrs. Crilley that
Plaintiffs qualified for HAMP, and Brian represented that, if
they made all three trial payments on time and if their
supporting documentation confirmed the information they provided
over the phone, they would receive a permanent loan modification.
The trial payments were to be approximately half of Plaintiffs'
original monthly mortgage payments.  Although Plaintiffs were
current on their mortgage payments at that time, they were
concerned that they would deplete their savings before the loan
modification was complete.  Brian assured them that they would
receive the HAMP modification contract within thirty days, and in
no event later than forty-five days.  [Id. at ¶¶ 17-20.]

        When Plaintiffs did not receive the HAMP contract
within forty-five days, Mrs. Crilley contacted BAC and was
informed that their case had been closed because they failed to
return the HAMP contract with supporting documentation within
forty-five days.  Mrs. Crilley explained that they never received
the contract, and the BAC representative informed her that the
HAMP package would be resent to them within seven to ten days.
The next day, February 19, 2010, another BAC representative
called Plaintiffs and informed them that it would take
thirty days to resend the HAMP package.  [Id. ¶¶ 21-23.]

On February 22, 2010, someone named Lisa from BAC advised Plaintiffs to stop making their mortgage payments. On February 25, 2010, Plaintiffs sent BAC a check for $1,000 as a partial payment with a letter explaining that they were waiting to receive their HAMP contract. From February 25 to March 22, 2010, Plaintiffs made several calls to BAC, but each time they were either transferred to someone who had no record of their case or put on hold for more than thirty minutes after which they were disconnected. [Id. at ¶¶ 24-26.]

Plaintiffs received a package from BAC on March 25, 2010, but it was a new HAMP application form. That day, Mrs. Crilley called BAC, and Shirley confirmed that Plaintiffs had to start the process over. Shirley stated that, if Plaintiffs missed their April mortgage payment, BAC would process their application faster. Plaintiffs timely submitted the application with the necessary supporting documents. During Plaintiffs' March 30, 2010 call to BAC, Kevin also instructed Plaintiffs to miss their April payment. On April 2, 2010, BAC confirmed that it received Plaintiffs' application. During Mrs. Crilley's April 9, 2010 call to BAC, Octario said that their application was complete and that they would receive their HAMP contract in the mail. [Id. at ¶¶ 29-33.]

Plaintiffs received another HAMP application from BAC on April 19, 2010. After Plaintiffs contacted BAC, two different

BAC representatives told them that the application had been sent in error and that Plaintiffs could disregard it. Plaintiffs, however, received a Notice of Intent to Accelerate on April 23, 2010. When Plaintiffs called BAC, BAC reassured them that their HAMP contract was being processed and that they would receive it within thirty to forty-five days. [<u>Id.</u> at ¶¶ 34-39.]

The Complaint goes on to describe additional delays in the loan modification process, including: multiple requests for further supporting documents; more phone calls where the BAC representatives denied having records of Plaintiffs' case; more disconnected phone calls; further instructions not to make their regular monthly mortgage payments; assurances that their HAMP contract was being sent to them shortly; and BAC's explanation that notes in Plaintiffs' records may have been caused by glitches in BAC's computer system. [<u>Id.</u> at ¶¶ 40-53.]

On July 22, 2010, Plaintiffs received a letter from BAC stating that they were not eligible for a HAMP loan modification because they received a negative net present value analysis ("the NPV" and "the HAMP Denial Letter"). The letter stated that the NPV would be sent to them and, if the information used in the analysis was incorrect, Plaintiffs could appeal the denial of the loan modification. The letter also stated that BAC could not foreclose until it sent Plaintiffs the NPV analysis. [<u>Id.</u> at ¶ 54.] Plaintiffs learned from BAC that the gross income used to

generate the NPV was based on Mr. Crilley's income before he was seriously injured while working for the Maui Fire Department.[3] By July 2010, he was receiving workers' compensation benefits and Plaintiffs' monthly income was substantially less than it was when they first applied for a loan modification in January 2010. [Id. at ¶ 56.]

The delays continued, but BAC personnel assured Plaintiffs that they were still being considered for a loan modification. At different times, BAC gave Plaintiffs conflicting advice about making their regular mortgage payments. BAC also told Plaintiffs that the ultimate decision to modify the loan and the responsibility to provide Plaintiffs with the NPV were in the hands of the holder of their loan, Bank of New York Mellon ("BONY"). A BONY representative, however, told Plaintiffs the opposite. According to BONY, BAC makes all loan modification decisions on BONY's behalf. BAC informed Plaintiffs of several delays in sending out the NPV and emphasized that Plaintiffs could neither challenge the NPV nor reapply for a loan modification until they received it. [Id. at ¶¶ 57-63.]

On August 13, 2010, Plaintiffs received a notice from BAC that they were seriously delinquent in their mortgage and that foreclosure would follow if Plaintiffs did not contact BAC.

---

[3] The Complaint states that Mr. Crilley was subsequently able to return to work. [Complaint at ¶ 85.]

Plaintiffs called BAC and spoke to Ashley, who told Plaintiffs that their gross income had been updated as of July 30, 2010. Plaintiffs verbally provided Ashley with their current financial information and, on August 18, 2010, sent BAC their supporting financial documents.  [Id. at ¶¶ 64-69.]

On August 21, 2010, Plaintiffs received a letter from BAC, dated August 17, 2010, stating that there were no available work-out options based on the financial information they provided.  On August 23, 2010, Plaintiffs contacted BAC and spoke with Porcha Jones, who told Plaintiffs their case was still under review and that they could ignore the August 17 letter.  She did, however, state that the letter was sent by another department and that Plaintiffs should call the number on the letter.  Plaintiffs did so and spoke to Ricardo, who told them BAC could provide a special forbearance for three, and up to six, months.  At the end of that time, Plaintiffs could reapply for a HAMP modification or challenge the NPV results.  [Id. at ¶¶ 70-72.]

On September 1, 2010, Kimberly Christopher told Plaintiffs that she and Elizabeth Lopez would be handling their file for BAC.  Plaintiffs continued to communicate with Ms. Christopher and Ms. Lopez.  BAC sent Plaintiffs a Special Forbearance contract, which they completed.  Ms. Lopez informed them on September 14, 2010 that it was effective for the next three months.  [Id. at ¶¶ 73-77.]  As the expiration of the

forbearance contract neared, Plaintiffs attempted to contact Ms. Christopher and Ms. Lopez to request the three-month extension, but Plaintiffs were informed that Ms. Christopher and Ms. Lopez no longer worked in the forbearance department. [Id. at ¶ 80.]

On November 19, 2010, Plaintiffs spoke with Damon Jones, who assured them that BAC would extend the forbearance contract. He directed them to fax a hardship letter explaining the need for the extension, and Plaintiffs did so. On November 30, 2010, Tara Hunt from BAC called Plaintiffs and said that she was processing their forbearance extension. She also said that she would simultaneously try to get them an in-house modification. Plaintiffs stressed to Ms. Hunt that they did not want to risk the forbearance extension for an attempt at an in-house modification. Ms. Hunt reassured Plaintiffs that they could still get the forbearance extension if they were denied the in-house modification and that they could reapply for a HAMP modification after the forbearance period. On or around December 7, 2010, however, BAC informed Plaintiffs that their forbearance contract was not extended because they were seeking an in-house modification or other work-out. After two weeks of repeated calls to BAC, Plaintiffs received a contract for the second three-month forbearance period. [Id. at ¶¶ 81-84.]

On February 17, 2011, Plaintiffs contacted Ms. Hunt to start a new HAMP application, but she informed them that they should not do so until the forbearance period ended on March 18, 2011. [Id. at ¶ 87.] Plaintiffs began working with two consumer advocacy groups, Faith Action for Community Equity ("FACE") and Hawaii Community Assets ("HCA"), which entered into negotiations with BAC. [Id. at ¶¶ 88-95.]

On March 10, 2011, HCA notified Plaintiffs that BAC would be sending them a contract for an in-house modification. Ms. Crilley contacted Mona De La Pena, a BAC loan modification officer who had previously said that she was their personal monitor, to inquire why the terms of the modification did not comply with the HAMP modifications guidelines. Ms. De La Pena said that Plaintiffs' HAMP modification had been denied. She also read Mrs. Crilley the notes in Plaintiffs' file. She noted the previous denial of the HAMP application and said that had Plaintiffs appealed the decision on September 25, 2010, but the appeal was denied. She also stated that BAC's records indicated that Plaintiffs had filed a NPV dispute on August 30, 2010, but that was also denied. Plaintiffs state that this information is false; Plaintiffs could neither appeal the modification denial nor dispute the NPV because they never received the NPV. [Id. at ¶¶ 93, 96-99.]

In September and October 2011, Plaintiffs received
seven different letters from BAC giving the names of seven
different "dedicated customer relationship managers". [Id. at
¶ 105.] As of the date of the Complaint, Plaintiffs had not
received a permanent loan modification offer. [Id. at ¶ 107.]

The Complaint alleges two claims: negligence ("Count
I") and unfair and deceptive acts and practices ("UDAP") pursuant
to Haw. Rev. Stat. § 480-2 ("Count II"). Count I alleges that:
"BAC Servicing Owed a Duty of Care to Plaintiffs in
Modification"; BAC breached that duty; and BAC's negligence
caused significant damage to Plaintiffs' credit scores. [Id. at
pgs. 26, 29-30.] Count I states "[w]hile lenders generally do
not owe a duty of care to borrowers when originating mortgage
loans, a duty of care arises when a servicer acts beyond the role
of a mere lender of money and actively engages with a borrower in
modification negotiations." [Id. at ¶ 109 (citing Ansanelli v.
JP Morgan Chase Bank, N.A., et al., U.S. Dist. LEXIS 32350 (N.D.
Cal. Mar. 28, 2011)).] Count II alleges, inter alia, that BAC
engaged in a scheme of prolonging the modification process to
generate additional interest and fees. "[U]nder this scheme, BAC
Servicing never intends to provide Plaintiffs with a loan
modification. Rather BAC Servicing's goal has been, and
continues to be, to keep loans in default and arrears for as long
as possible before ultimately foreclosing to maximize its fees

and the payments it can extract from Plaintiffs." [Id. at ¶ 142.] Plaintiffs also contend that BONY should be enjoined from foreclosing on Plaintiffs' Property. [Id. at ¶¶ 154-57.]

The Complaint seeks the following relief: an order enjoining BONY from foreclosing on the Property; statutory, punitive, treble, and compensatory damages; reasonable attorneys' fees; and any other appropriate relief. [Id. at pg. 37.]

## I. **Motion**

In the instant Motion, Defendant argues that the Court should dismiss the Complaint with prejudice because it fails to state a claim upon which relief can be granted and does not allege facts sufficient to support any claim for relief under Hawai`i law and Fed. R. Civ. P. 8 and 9(b). Defendant also argues that any attempt to amend the Complaint would be futile. Defendant argues that: Plaintiffs' negligence claim fails because Defendant was under no duty to modify Plaintiffs' loan; and Plaintiffs' UDAP claim is insufficiently pled. Defendant also notes that, although Plaintiffs argue that BONY should be enjoined from foreclosing on the Property, Plaintiffs have not alleged that BONY has initiated the foreclosure process. Further, BONY is not a party in this action and, insofar as Plaintiffs have no valid claim against Defendant, they have no valid claim to stop BONY from foreclosing on the Property.

According to Defendant, the general rule that lenders owe no duty of care to borrowers also applies to loan servicers. [Mem. in Supp. of Motion at 6 (some citations omitted) (citing Castaneda v. Saxon Mortg. Svcs., Inc., 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009); Wattas v. Decision One Mortg. Co., LLC, 2009 WL 2044595, *3 (S.D. Cal. July 13, 2009)).] There are no special circumstances that would give rise to a duty owed to Plaintiffs because Defendant's review of Plaintiffs' loan modification application was part of its routine duties as a loan servicer. Defendant argues that Ansanelli does not help Plaintiffs because that case affirmed that "'[l]iability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender.'" [Id. at 8 (quoting 2011 WL 1134451, at *7 (citing Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991)) (Defendant's emphasis omitted).] The defendant in Ansanelli "'went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning the trial period plan.'" [Id. (quoting 2011 WL 1134451, at *7) (Defendant's emphasis omitted).] Defendant argues that it did not engage in such activity with regard to Plaintiffs' loan because Plaintiffs were not on a modification plan, nor have Plaintiffs alleged that Defendant informed them the loan was current, or instructed them

12

to continue paying a modified amount. Defendant argues that placing Plaintiffs in a special forbearance plan while they awaited loan modification was not enough to trigger a duty.

Defendant urges the Court to follow <u>Ottolini v. Bank of America</u>, which distinguished <u>Ansanelli</u>, and to rule that "no <u>Nymark</u> duty existed for a defendant mortgage servicer when a application for a loan modification never 'progressed to a concrete stage and there [was] no indication of the likelihood that such an application would have been granted.'" [<u>Id.</u> at 9 (quoting 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011)) (alteration Defendant's).]

Defendant also argues that Plaintiffs' UDAP claim, which is based in fraud because it relies on alleged misrepresentations, fails because there was no duty to modify the loan and because Plaintiffs have not pled the claim with particularity. The alleged impairment of Plaintiffs' credit scores is not an injury to their business or property, and Plaintiffs' claim that, but for Defendant's misrepresentations, they would have sought other relief to avoid foreclosure is "entirely hypothetical, unsubstantiated, and conclusory." [<u>Id.</u> at 15.] Defendant also argues that the Complaint does not identify the alleged misrepresentations with particularity.

## II. <u>Memorandum in Opposition</u>

In their memorandum in opposition, Plaintiffs argue

13

that mortgage servicers, by definition, act beyond the conventional role of a mere lender of money because mortgage servicers collect payments and do not originate loans. Plaintiffs argue that BAC actively engaged in collecting detailed financial information from Plaintiffs during the loan modification process. Plaintiffs emphasize that they were in regular contact with BAC for the past two years and that the entire loan modification process was out of Plaintiffs' hands, resulting in an imbalance of power. In a conventional lender/borrower relationship, the potential borrower has more autonomy to accept or reject a loan, but that is not the case in a loan modification. Plaintiffs relied on BAC to honestly and accurately conduct a timely evaluation of their loan modification application, and the result of Plaintiffs' inability to obtain a loan modification is the loss of their home. Thus, Plaintiffs argue that special factors exist to take their relationship with BAC out of the traditional borrower/lender relationship.

Plaintiffs emphasize that, even if BAC was merely acting as a conventional lender of money, the Nymark rule that a lender owes no duty to a borrower is merely a general rule. To determine whether a duty exists, the Court should apply the six-factor test set forth in Biakanja v. Irving, 320 P.2d 15 (Cal. 1958). Plaintiffs argue that, under that analysis, BAC clearly owed them a duty of care. [Mem. in Opp. at 5-7.]

14

Plaintiffs also assert that their UDAP claim is sufficiently pled.  Plaintiffs emphasize that the UDAP claim is premised on BAC's scheme to prolong the modification process before ultimate foreclosure; the claim is not based on an assumption that Defendant had a duty to modify Plaintiffs' loan. Plaintiffs argue that they have sufficiently pled the who, what, when, where, and how of BAC's misrepresentations about important aspects of the loan modification process.

Thus, Plaintiffs urge the Court to deny the Motion.[4]

## III. Reply

In its reply, Defendant argues that Plaintiffs failed to address the Motion's identification of specific deficiencies in the negligence and UDAP claims, and therefore Plaintiffs have conceded that those claims lack merit.  Plaintiffs have not responded either to Defendant's argument that it was merely acting in its traditional role as a loan servicer or to Defendant's argument regarding the failure to plead damages with particularity in the UDAP claim.  In addition to reiterating the arguments in the Motion, Defendant argues that the Biakanja factors show that Defendant did not owe Plaintiffs a duty.

---

[4] Plaintiffs also raised arguments based on a recent settlement between forty-nine state attorneys general and five of the nation's largest banks, including BOA, but the Court will not discuss those arguments because they are irrelevant to the instant case.

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

> Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). . . .
>
> On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554, 127 S. Ct. 1955).

Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc., 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

> This Court, however, notes that the tenet that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. Id. at 1950.

16

> "Dismissal without leave to amend is improper
> unless it is clear that the complaint could not be
> saved by any amendment." <u>Harris v. Amgen, Inc.</u>,
> 573 F.3d 728, 737 (9th Cir. 2009) (citation and
> quotation marks omitted).

<u>Enriquez v. Countrywide Home Loans, FSB</u>, 814 F. Supp. 2d 1042,

1055 (D. Hawai`i 2011) (some citations omitted).

<b><u>DISCUSSION</u></b>

I.  <b><u>Negligence</u></b>

Under Hawai`i law, there are four required elements of

a negligence claim:

> (1) A duty, or obligation, recognized by the
> law, requiring the defendant to conform to a
> certain standard of conduct, for the
> protection of others against unreasonable
> risks;
>
> (2) A failure on the defendant's part to
> conform to the standard required: a breach of
> the duty;
>
> (3) A reasonably close causal connection
> between the conduct and the resulting injury;
> and
>
> (4) Actual loss or damage resulting to the
> interests of another.

> <u>Takayama v. Kaiser Found. Hosp.</u>, 82 Hawai`i 486,
> 498–99, 923 P.2d 903, 915–16 (1996); <u>see also</u>
> <u>Kaho`ohanohano v. Dep't of Human Servs.</u>, 117
> Hawai`i 262, 287 n.31, 178 P.3d 538, 563 n.31
> (2008) (listing elements for negligence as "(1)
> duty; (2) breach of duty; (3) causation; and (4)
> damages"); <u>Cho v. Hawaii</u>, 115 Hawai`i 373, 379
> n.11, 168 P.3d 17, 23 n.11 (2007) (same).

<u>Pagano v. OneWest Bank, F.S.B.</u>, CV. No. 11-00192 DAE-RLP, 2012 WL

74034, at *4 (D. Hawai`i Jan. 10, 2012).

This district court has frequently recognized the principle that:

> Lenders generally owe no duty of care sounding in negligence to their borrowers. <u>Caraang v. PNC Mortg.</u>, 795 F. Supp. 2d 1098, 1122 (D. Haw. 2011); <u>see also</u> <u>Champlaie v. BAC Home Loans Servicing, LP</u>, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009) ("[A]s a matter of law, [a] lender [does] not owe a duty in negligence not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to pay."); <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u>, 231 Cal. App. 3d 1089, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991) ("[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.")

<u>Id.</u> at *4 (footnote omitted); <u>see also, e.g.</u>, <u>Tedder v. Deutsche Bank Nat'l Tr. Co.</u>, Civil No. 11-00083 LEK-KSC, 2012 WL 1028125, at *15 (D. Hawai`i Mar. 23, 2012); <u>Enriquez</u>, 814 F. Supp. 2d at 1071; <u>Gorospe v. New Century Mortg. Corp.</u>, CV. No. 10-00505 DAE-BMK, 2011 WL 3734230, at *9 (D. Hawai`i Aug. 23, 2011); <u>McCarty v. GCP Mgmt., LLC</u>, Civil No. 10-00133 JMS/KSC, 2010 WL 4812763, at *6 (D. Hawai`i Nov. 17, 2010).

California courts have expressly recognized that loan servicers do not owe a duty of care to the borrowers of the loans they service. <u>See, e.g.</u>, <u>Shepherd v. Am. Home Mortg. Servs., Inc.</u>, No. Civ. 2:09-1916 WBS GGH, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) (citing <u>Watts v. Decision One Mortg. Co.</u>, No. 09-43, 2009 U.S. Dist. LEXIS 59694 (S.D. Cal. July 13, 2009); <u>Marks v. Ocwen Loan Servicing</u>, No. 07-2133, 2009 WL 975792, at *7

18

(N.D. Cal. Apr. 10, 2009) ("[A] loan servicer does not owe a
fiduciary duty to a borrower beyond the duties set forth in the
loan contract")). This district court has cited Shepherd for
that proposition. See, e.g., Vertido v. GMAC Mortg. Corp., CV.
No. 11-00360 DAE-KSC, 2012 WL 139212, at *11 (D. Hawai`i Jan. 17,
2012); Teaupa v. U.S. Nat'l Bank N.A., Civil No. 10-00727
JMS-BMK, 2011 WL 6749813, at *13 (D. Hawai`i Dec. 22, 2011);
Fujikawa v. One West Bank, FSB, Civ. No. 11-00151 HG-KSC, 2011 WL
3021331, at *6 (D. Hawai`i July 21, 2011). This Court therefore
concludes that, as a general rule, a loan servicer does not owe a
duty of care to a borrower in a loan it services, unless the loan
servicer's activities exceed its traditional role.

In addition to stating the general rule that lenders do
not owe borrowers a duty of care, Nymark also stated:

> In California, the test for determining whether a
> financial institution owes a duty of care to a
> borrower-client "'involves the balancing of
> various factors, among which are [1] the extent to
> which the transaction was intended to affect the
> plaintiff, [2] the foreseeability of harm to him,
> [3] the degree of certainty that the plaintiff
> suffered injury, [4] the closeness of the
> connection between the defendant's conduct and the
> injury suffered, [5] the moral blame attached to
> the defendant's conduct, and [6] the policy of
> preventing future harm.'" (Connor v. Great
> Western Sav. & Loan Assn. (1968) 69 Cal.2d 850,
> 865, 73 Cal. Rptr. 369, 447 P.2d 609, quoting
> Biakanja v. Irving (1958) 49 Cal.2d 647, 650, 320
> P.2d 16[.])

283 Cal. Rptr. at 58 (some citations omitted).[5]  Plaintiffs argue

that the Court should apply these factors, which Plaintiffs

contend weigh in favor of a finding that Defendant owed

Plaintiffs a duty of care.  Defendant argues that these factors

weigh against a finding of a duty.

Although not in the borrower-lender context, this

district court has recognized similar factors as part of the

analysis of whether a duty of care exists under Hawai`i law.

See, e.g., Yi v. Pleasant Travel Serv., Inc., Civil No. 10-00318

LEK-RLP, 2011 WL 4443625, at *12 (D. Hawai`i Sept. 22, 2011)

(quoting Pulawa v. GTE Hawaiian Tel, 112 Hawai`i 3, 12, 143 P.3d

1205, 1214 (2006)); Haw. Motorsports Inv., Inc. v. Clayton Grp.

---

[5] The Court also notes that:

> In [Glenn K. Jackson Inc. v.] Roe, [273 F.3d
> 1192 (9th Cir. 2001),] the Ninth Circuit noted
> that the California Supreme Court "arguably
> limited" Biakanja in Bily v. Arthur Young & Co., 3
> Cal.4th 370, 11 Cal. Rptr. 2d 51, 834 P.2d 745
> (1992), which held a court must consider three
> additional factors before imposing a duty of care.
> Roe, 273 F.3d at 1198.  Roe summarized these
> factors as "(1) liability may in particular cases
> be out of proportion to fault; (2) parties should
> be encouraged to rely on their own ability to
> protect themselves through their own prudence,
> diligence and contracting power; and (3) the
> potential adverse impact on the class of
> defendants upon whom the duty is imposed."  Id.
> (citing Bily, 3 Cal.4th at 399-405, 11 Cal. Rptr.
> 2d 51, 834 P.2d 745).  Bily was decided before
> Nymark, but not discussed therein.

Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029,
1061 (E.D. Cal. 2009).

<u>Servs., Inc.</u>, CIV. No. 09-00304 SOM/BMK, 2010 WL 3398553, at *5
(D. Hawai`i Aug. 27, 2010) (quoting <u>Blair v. Inq</u>, 95 Hawai`i 247,
260, 21 P.3d 452, 465 (2001)).  In light of this Court's finding
that Plaintiffs have sufficiently pled facts which indicate that
Defendant exceeded its conventional rule, this Court need not
issue a ruling regarding whether the six-factor <u>Nymark</u> analysis
applies in the instant case.

Plaintiffs urge this Court to follow <u>Ansanelli</u>, in
which the district court denied the defendant's motion to dismiss
the plaintiffs' negligence claim because

> the complaint alleges that defendant went beyond
> its role as a silent lender and loan servicer to
> offer an opportunity to plaintiffs for loan
> modification and to engage with them concerning
> the trial period plan.  Contrary to defendant,
> this is precisely "beyond the domain of a usual
> money lender."  Plaintiffs' allegations constitute
> sufficient active participation to create a duty
> of care to plaintiffs to support a claim for
> negligence.

2011 WL 1134451, at *7.

Defendant argues that <u>Ansanelli</u> is inapplicable to the
instant case because Plaintiffs were never in a trial loan
modification plan; in fact, Plaintiffs' application for a HAMP
loan modification was denied.  Defendant contends that this case
is similar to <u>Ottolini</u>, in which the district court ruled:

> In sum, under the circumstances of this case,
> particularly the fact that the application for
> loan modification had not progressed to a concrete
> stage and that there is no indication of the
> likelihood that such an application would have

> been granted, <u>cf.</u> <u>Ansanelli</u>, 2011 WL 1134451, 2011
> U.S. Dist. LEXIS 32350 (finding a duty found where
> lender agreed to place borrower on modification
> plan), the Court finds there is no duty owed by
> the Defendants to Mr. Ottolini with respect to his
> attempt to submit a loan modification application.
> In the absence of a duty, the . . . negligence
> claims are without merit.

2011 WL 3652501, at *7.

Defendant is correct that Plaintiffs in the instant

action are not in as persuasive a position as the plaintiffs in

<u>Ansanelli</u>: the Ansanellis were in a trial loan modification plan

with a promise of a permanent modification if they made all of

the payments under the trial plan on time.  2011 WL 1134451, at

*1.  This Court, however, does not read <u>Ansanelli</u> as concluding

that engaging the plaintiffs in a trial loan modification plan is

the only way in a defendant can exceed its conventional role as

"a silent lender and loan servicer".  <u>Id.</u> at *7.

Further, the factual allegations in Plaintiffs'

Complaint make a stronger case for a finding of a duty than the

facts of <u>Ottolini</u>.  The borrower, Mr. Ottolini, made inquiries

about his options when was unable to pay his mortgage; the lender

initially told him that there were no available options.  When

the lender finally requested documents in order to pursue a loan

modification, the lender stated that it never received the

documents Mr. Ottolini repeatedly sent.  Prior to the foreclosure

sale, Mr. Ottolini inquired about the lack of response to his

loan modification request.  The lender said that it would send

22

Mr. Ottolini another application, but Mr. Ottolini did not receive the application packet until the day of the foreclosure sale.  Mr. Ottolini sought immediate review of his documents, but the lender informed him that nothing could be done.  2011 WL 3652501, at *1-2.

In contrast, in the present case, BAC sent Plaintiffs a solicitation about the HAMP program, and Plaintiffs began the loan modification process by filling out an on-line form.  After a one-hour phone interview on January 4, 2010, a BAC employee named Brian told Plaintiffs that they qualified for the HAMP loan modification program and that they would receive a permanent loan modification if they made all of their trial payments on time and if their supporting documentation corroborated the information they provided over the phone.  Brian also told Plaintiffs that they would receive their HAMP contract within forty-five days. [Complaint at ¶¶ 16-20.]  While Plaintiffs waited through numerous delays in the receipt of the HAMP contract that BAC assured them was coming, BAC personnel counseled Plaintiffs on multiple occasions not to make their mortgage payments because a delinquent account would prompt BAC to process their loan modification application faster.  [Id. at ¶¶ 24, 30, 32, 47.]  As late as June 17, 2010, BAC personnel informed Plaintiffs that they would be receiving their HAMP loan modification contract "very soon."  [Id. at ¶ 52.]  Even after Plaintiffs received the

HAMP Denial Letter on July 22, 2010, BAC repeatedly represented to Plaintiffs that they could still be considered for loan modification, either through an appeal of the denial of the HAMP modification, a challenge to the NPV, or a re-application for a HAMP modification at the end of the forbearance period. [Id. at ¶¶ 54, 72.] BAC also told Plaintiffs that it was working on an in-house modification for them. [Id. at ¶¶ 57, 60.] BAC assured Plaintiffs that, even if they were denied an in-house loan modification, they would still be eligible for an extension of their special forbearance agreement and they could still reapply for a HAMP modification at the end of the forbearance period. [Id. at ¶ 83.]

For purposes of the instant Motion, this Court must presume these factual allegations to be true. Thus, this Court finds that Plaintiffs have pled sufficient facts to support a finding that Defendant went beyond its conventional role as a loan servicer by soliciting Plaintiffs to apply for a loan modification and by engaging with them for several months in the manner described *supra*. As the district court did in Ansanelli, this Court FINDS that "Plaintiffs' allegations constitute sufficient active participating to create a duty of care to plaintiffs to support a claim for negligence."[6]  See 2011 WL

_____

[6] The Court has merely found that Plaintiffs have alleged sufficient facts which, if proven, would support a finding that
(continued...)

1134451, at *7.  Further, the Court finds that Plaintiffs have

sufficiently pled the other elements of their negligence claim

and that Plaintiffs have stated a plausible negligence claim.

Defendant's Motion is therefore DENIED as to Count I.

## II.  UDAP

As to Count II, Plaintiffs' UDAP claim, Defendant

argues that this claim fails because Defendant did not owe

Plaintiffs a duty and because Plaintiffs failed to plead Count II

with the requisite particularity.  This district court has

recognized that, where a Haw. Rev. Stat. § 480-2 claim[7] is based

---

[6](...continued)
Defendant owed Plaintiffs a duty of care in processing
Plaintiffs' loan modification application.  This finding is not
the equivalent of a finding that Defendant had a duty to modify
Plaintiffs' loan.

[7] Haw. Rev. Stat. § 480-2(a) states: "Unfair methods of
competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce are unlawful."  Haw Rev. Stat.
§ 480-13(a) states, in pertinent part:

> any person who is injured in the person's business
> or property by reason of anything forbidden or
> declared unlawful by this chapter:
>
> > (1) May sue for damages sustained by the
> > person, and, if the judgment is for the
> > plaintiff, the plaintiff shall be awarded a
> > sum not less than $1,000 or threefold damages
> > by the plaintiff sustained, whichever sum is
> > the greater, and reasonable attorney's fees
> > together with the costs of suit; provided
> > that indirect purchasers injured by an
> > illegal overcharge shall recover only
> > compensatory damages, and reasonable
> > attorney's fees together with the costs of
> > > (continued...)

upon the non-existent duty of a lender to a borrower, the § 480-2 claim also fails. <u>See, e.g.</u>, <u>Casino v. Bank of Am.</u>, Civil No. 10-00728 SOM/BMK, 2011 WL 1704100, at *12-13 (D. Hawai`i May 4, 2011). This Court, however, has already found that Plaintiffs pled sufficient facts to state a plausible negligence claim, including the existence of a duty. Similarly, this Court DENIES Defendant's Motion to the extent that it seeks dismissal of Count II based on the lack of a duty.

Plaintiffs' UDAP claim is based upon alleged fraudulent misrepresentations. Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that a party make particularized allegations of the circumstances constituting fraud. <u>See</u> <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir. 2010).

In their pleadings, Plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." <u>Shroyer v. New Cingular Wireless</u>

---

[7](...continued)
suit in actions not brought under section 480-14(c); and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.

Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind – or scienter – of the defendants may be alleged generally." (citation omitted)); Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)). Fraud claims, "in addition to pleading with particularity, also must plead plausible allegations. That is, the pleadings must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'" Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 566, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The Hawai`i Supreme Court has stated that there are "three elements essential to recovery under [Haw. Rev. Stat.] § 480-13: (1) a violation of [Haw. Rev. Stat.] chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." Davis v. Four Seasons Hotel Ltd., 122 Hawai`i 423, 435, 228 P.3d 303, 315 (2010)

(footnote and citations omitted).  In the instant case, Defendant

argues that the Court must dismiss Count II because Plaintiffs

have failed to "identify any violation of UDAP or any actual

damages[.]"  [Mem. in Supp. of Motion at 15.]

This district court has recognized that:

[Haw. Rev. Stat. § 480-2], however, does not
specifically define the terms "unfair" or
"deceptive" acts or practices.

The Hawai`i Intermediate Court of Appeals has
adopted the definition that "a practice is unfair
when it offends established public policy and when
the practice is immoral, unethical, oppressive,
unscrupulous or substantially injurious to
consumers."  Tokuhisa v. Cutter Management Co.,
223 P.3d 246, 259 (Haw. App. 2009) (citation
omitted); Balthazar v. Verizon Haw., Inc., 123
P.3d 194, 202 (Haw. 2005).  In addition, the
Supreme Court of Hawai`i has noted that

[i]t is impossible to frame definitions which
embrace all unfair practices.  There is no
limit to human inventiveness in this field.
Even if all known practices were specifically
defined and prohibited, it would be at once
necessary to begin over again.  If Congress
were to adopt the method of definition, it
would undertake an endless task.  It is also
practically impossible to define unfair
practices so that the definition will fit
business of every sort in every part of this
country.  Whether competition is unfair or
not generally depends upon the surrounding
circumstances of the particular case.  What
is harmful under certain circumstances may be
beneficial under different circumstances.

Haw. Med. Ass'n [v. Haw. Med. Serv. Ass'n, Inc.],
148 P.3d [1179,] 1209 [(2006)] (citation and
internal quotation marks omitted).

The Supreme Court of Hawai`i has "referred to
the meaning of a deceptive practice by citing the

definition employed by federal courts with respect to 'an act causing, as a natural and probable result, a person to do that which he or she would not otherwise do.'" _Balthazar_, 123 P.3d at 202 (citation and brackets omitted). A deceptive practice has also been defined as having "the capacity or tendency to mislead or deceive." _Tokuhisa_, 223 P.3d at 259 (quoting _State by Bronster v. United States Steel Corp._, 919 P.2d 294, 312, 313 (Haw. 1996)). The Supreme Court of Hawai`i also stated that "actual deception need not be shown; the capacity to deceive is sufficient." _U.S. Steel Corp._, 919 P.2d at 313.

Hawai`i courts have also adopted a three-part analytical test for "deception" based upon in _In re Cliffdale Assocs., Inc._, 103 F.T.C. 110 (1984). _Tokuhisa_, 223 P.3d at 260. The test states a deceptive act or practice is:

> (1) a representation, omission, or practice [ ] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3)[ ] the representation, omission, or practice is material.
>
> A representation, omission, or practice is considered "material" if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.

_Id._ (quotations and internal marks and citations omitted). Moreover, the _Tokuhisa_ court clarified that the _Cliffdale Assocs._ test is objective, turning on whether the act or omission "is likely to mislead consumers," as to information "important to consumers," in making a decision regarding the product or service. _Id._ (internal marks and quotations omitted). Accordingly, the application of an objective "reasonable person" standard, such as in the _Cliffdale Assocs._ test, is ordinarily for the trier of fact, rendering summary judgment "often inappropriate." _Id._ (internal marks and quotations omitted).

Hawai`i courts have indicated that the terms unfair and deceptive should be interpreted

29

broadly.  Specifically, the Supreme Court of
Hawai`i and its appellate courts have stated that
[Haw. Rev. Stat.] § 480-2

> outlaws unfair methods of competition and
> unfair or deceptive trade practices in
> sweeping terms.  It was constructed in broad
> language in order to constitute a flexible
> tool to stop and prevent fraudulent, unfair
> or deceptive business practices for the
> protection of both consumers and honest
> businessmen and businesswomen.

Han v. Yang, 931 P.2d 604, 619 (Haw. App. 1997)
(citations, internal quotation marks, and brackets
omitted).

Stanton v. Bank of Am., N.A., Cv. No. 09-00404 DAE-LEK, 2010 WL

4176375, at *10-11 (D. Hawai`i Oct. 19, 2010) (footnote omitted)

(some alterations in original).

The crux of Plaintiffs' UDAP claim is that BAC's

actions establish that it was engaged in a scheme in which it

never intended to modify Plaintiffs' loan.  Instead, BAC intended

to keep Plaintiffs' loan "in default and arrears for as long as

possible before ultimately foreclosing to maximize its fees and

the payments it can extract from Plaintiffs."  [Complaint at

¶ 142.]  This Court finds that Plaintiffs have sufficiently pled

the time, place, and content of the allegedly fraudulent

representations which form the basis of the UDAP claim.  Further,

the Court finds that Plaintiffs' allegations of Defendant's

scheme to artificially extend the loan modification process to

maximize fees and payments prior to an inevitable foreclosure

sufficiently allege an unfair or deceptive act or practice.

As to Plaintiffs' damages, the Complaint alleges that: BAC's "false representations that Plaintiffs would only qualify for loan modification if they remained delinquent on their mortgage payments has caused Plaintiffs significant damage to their credit scores"; and, but for BAC's misrepresentations, "Plaintiffs would have sought alternate foreclosure avoidance relief, such as a short sale or deed in lieu." [Id. at ¶¶ 152-53.] This Court FINDS that Plaintiffs' allegations are plausible and are sufficient to satisfy the pleading requirement to allege the damages suffered as a result of the alleged UDAP violation.

This Court therefore FINDS that Plaintiffs have alleged a plausible UDAP claim, and the Court DENIES Defendant's Motion as to Count II.

## III. Request to Enjoin Foreclosure

Plaintiffs seek an order enjoining BONY from foreclosing on the Property. [Id. at ¶ 157.] Insofar as BONY is not a party to this action, Plaintiffs cannot obtain an injunction against BONY. The Court therefore GRANTS Defendant's Motion to the extent that the Court DISMISSES Plaintiffs' request for an order enjoining BONY from foreclosing on the Property. The dismissal is WITHOUT PREJUDICE.

### CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss Complaint Filed on January 5, 2012, filed February 15,

2012, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as Plaintiffs' request for an order enjoining BONY from foreclosing upon the Property is DISMISSED WITHOUT PREJUDICE. The Motion is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 26, 2012.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LAWRENCE CRILLEY, ET AL. V. BANK OF AMERICA, N.A., ET AL; CIVIL NO. 12-00081 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT FILED ON JANUARY 5, 2012**