IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LAWRENCE CRILLEY and MARCY ) CIVIL NO. 12-00081 LEK-BMK
KOLTUN-CRILLEY, )
)
     Plaintiffs, )
)
   vs. )
)
BANK OF AMERICA, N.A.; BAC )
HOME LOAN SERVICING, LP; JOHN )
AND MARY DOES 1-10, )
)
     Defendants. )
_____ )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

On January 23, 2013, Defendant Bank of America, N.A.,

on its own behalf and as successor-by-merger to BAC Home Loans

Servicing, LP ("Defendant") filed the instant Motion For Summary

Judgment Or In The Alternative Partial Summary Judgment

("Motion").  Plaintiffs Lawrence Crilley and Marcy Koltun-Crilley

("Plaintiffs") filed their memorandum in opposition on March 15,

2013, and Defendant filed its reply on March 25, 2013.  This

matter came on for hearing on April 8, 2013.  Appearing on behalf

of Defendant was Patricia McHenry, Esq., and appearing on behalf

of Plaintiffs was James Fosbinder, Esq.  After careful

consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, Defendant's Motion is HEREBY

GRANTED.

**BACKGROUND**

The relevant facts and procedural background of this case are set forth in this Court's April 26, 2012 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Filed on January 5, 2012.  2012 WL 1492413 ("4/26/12 Order").[1]  The Court will therefore not repeat them here.

**I.   Motion**

In the instant Motion, Defendant argues that the Court should grant summary judgment as to both of the claims in the Plaintiffs' Complaint.  The Complaint alleges two claims: negligence ("Count I") and unfair and deceptive acts and practices ("UDAP") pursuant to Haw. Rev. Stat. § 480-2 ("Count II").  As to the negligence claim (Count I), Defendant argues that it owed Plaintiffs no common law duty and, even if a duty existed, there was no breach because Defendant offered Plaintiffs three separate loan modifications.

Defendant notes that lenders generally owe no duty to borrowers when originating mortgage loans, and similarly owe no duty to modify a borrower's loan.  [Mem. in Supp. of Motion at 9 (citing Shepherd v. Am. Home Mortg. Servs. Inc., 2009 WL 4505925

_____

[1] The Court notes that this history includes that Plaintiffs are hardworking people who encountered great personal difficulties, which resulted in financial problems and gave rise to their need to seek modification of their home mortgage. Plaintiffs valiantly and diligently persisted in seeking loan modifications and their efforts resulted in three separate permanent loan modification offers.

at *2 (E.D. Cal. Nov. 20, 2009); Ottolini v. Bank of Am., 2011 WL
3652501 (N.D. Cal. Aug. 19, 2011); Arqueta v. J.P. Morgan Chase,
2011 WL 6012323 (E.D. Cal. Dec. 1, 2011)).]  Defendant argues
that the instant case is distinguishable from Ansanelli v. JP
Morgan Chase Bank, N.A., because here there are no special
circumstances that would give rise to a duty owed to Plaintiffs,
as Defendant's review of Plaintiffs' loan modification
application was part of its routine duties as a loan servicer.
[Id. at 10 (citing Ansanelli, 2011 WL 1134451 (N.D. Cal. Mar. 28,
2011)).]

    Defendant argues that this case is more like the
Lindsey v. Bank of America, N.A. case, in which this Court
rejected the plaintiffs' arguments that the servicer owed a duty
of care when it actively engaged in loan modification
negotiations.  In Lindsey, the Court found that the bank owed no
special duty where it offered the plaintiffs a loan modification
which they rejected, and plaintiffs did not allege sufficient
facts to demonstrate that the defendant acted "beyond the domain
of a usual money lender so as to create a duty of care."
Lindsey, 2012 WL 5198160 at *9-10 (D. Hawai`i Oct. 19, 2012).
Defendant argues that here, similarly, Plaintiffs were offered
three permanent loan modification offers and voluntarily declined
them all.  [Mem. in Supp. of Motion at 13 (citing Defendant's
Concise Statement in Supp. of Motion ("Defendant's Concise

Statement") at ¶¶ 16-18, 20-23).] Defendant thus argues it owed no duty to Plaintiffs.

Defendant further argues that, even if it owed a duty to Plaintiffs, they cannot show breach and causation. Specifically, Defendant argues that its provision of three separate loan modification offers demonstrates that, even if it owed a duty to Plaintiffs, it did not breach that duty. [Id. at 15.] Further, Defendant argues that Plaintiffs suffered no damages caused by Defendant. Defendant notes that Hawai`i law requires a finding of actual loss or damage in a negligence claim. [Id. at 16 (citing Takayama v. Kaiser Found. Hosp., 82 Hawai`i 486, 498-9, 923 P.2d 903, 915-16 (1996)).] Defendant argues that Plaintiffs' alleged negative credit ratings constitutes an economic loss, a type of damages not recoverable in a claim for negligence. [Id.]

Defendant also argues that Plaintiffs' negligence claim is barred by the doctrine of unclean hands, which states that a party should generally not be allowed to profit from its own misconduct. [Id. at 17 (citing Shin v. Edwin Yee, Ltd., 57 Haw. 215, 231, 553 P.2d 733, 744 (1976)).] In the instant case, Defendant argues, because Plaintiffs intentionally defaulted on their mortgage payment obligations and rejected three separate loan modification offers, they were the sole cause of the alleged injury for which they seek to hold Defendant liable. [Id. at 17-

4

18.]

As to Plaintiff's UDAP claim (Count II), Defendant argues that no material misrepresentation occurred.  Defendant argues that Plaintiffs' claim that Defendant told them that the only way to qualify for a loan modification was to be delinquent on their loan is not actionable.  [Id. at 18-19.]  Defendant argues that, in any case, Plaintiffs' allegation is essentially a claim that Defendant orally modified the loan agreement to allow Plaintiffs to withhold payments so that they would be eligible for the loan modification.  Any such agreement, however, would be subject to the Statute of Frauds and thus require a writing. [Id. at 19 (citing Northern Trust, NA v. Wolfe, 2012 WL 1983339, at *22 (D. Hawai`i 2012)).]  Defendant also notes that this district court has held that alleged Home Affordable Modification Program ("HAMP") violations cannot form the basis of a UDAP claim.  [Id. (citing Rey v. Countrywide Home Loans, Inc., Civ. No. 11-00143 JMS-KSC, 2012 WL 253137 at *9 (D. Hawai`i Jan. 26, 2012)).]

Defendant further argues that Plaintiffs' UDAP claim must fail because they cannot produce proof of actual damages. It is undisputed that no foreclosure has occurred, and any alleged negative credit reporting does not suffice as injury to Plaintiffs' business or property.  [Id. at 20 (citing Haw. Rev. Stat. § 480-13(a)).]  Further, Defendant argues, any alleged

5

damages were caused by the Plaintiffs' own decision to decline the three loan modifications offered by Defendant. [Id.]

As such, Defendant urges the Court to grant its Motion and dismiss Plaintiffs' Complaint with prejudice.

## II. <u>Memorandum in Opposition</u>

In their memorandum in opposition, Plaintiffs first argue that Defendant is not entitled to summary judgment as to the negligence claim (Count I). Plaintiffs acknowledge the general rule that a financial institution owes no duty of care to a borrower when it is acting within its conventional role as a lender of money, but nevertheless argue that Defendant's participation in Plaintiffs' loan modification gave rise to special circumstances such that a duty existed. [Mem. in Opp. at 14.] Plaintiffs emphasize that they had multiple conversations with Defendant from January to March of 2010, during which Defendant agreed to place Plaintiffs on a trial loan modification plan, guaranteeing that if they made payments on time in the modified amount over three months, they would receive a permanent modification of their loan. Plaintiffs thus argue that the instant case is similar to the <u>Ansanelli</u> case in that special factors exist to take their relationship with Defendant out of the traditional borrower/lender relationship. [<u>Id.</u> (citing <u>Ansanelli</u>, 2011 WL 1134451).]

Plaintiffs emphasize that, even if Defendant was merely acting as a conventional lender of money, the Nymark rule[2] that a lender owes no duty to a borrower is merely a general rule.  To determine whether a duty exists, the Court should apply the six-factor test set forth in Biakanja v. Irving, 320 P.2d 15 (Cal. 1958).  Plaintiffs argue that, under that analysis, Defendant clearly owed them a duty of care.  [Mem. in Opp. at 14-16.]

Plaintiffs further argue that they have established breach and causation.  Specifically, Plaintiffs have established Defendant breached its duty when it (1) failed to provide Plaintiffs with the HAMP trial period plan agreement despite stating several times that it was being sent out; and (2) failed to provide Plaintiffs with the negative net present values ("NPVs") used in denying Plaintiffs a permanent HAMP modification for over fifteen months, thereby denying Plaintiffs the ability to make an informed decision about other potential work-out solutions.  [Id. at 18-19.]  Plaintiffs argue that they have clearly established that Defendant was the direct cause of harm to their credit scores by repeatedly instructing them to stop making payments on their mortgage loan, failing to provide them with the HAMP trial period plan, failing to provide them with the

---

[2] Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991).

NPV values, and generally causing significant delays in processing their modification.  [Id. at 19.]

Plaintiffs argue that the harm to their credit ratings resulted in actual loss and damage.  Plaintiffs emphasize that this district court has recognized that financial loss resulting from damage to credit scores can be sufficient for establishing damages in negligence.  [Id. (citing Gomes v. Bank of Am., N.A., 2012 WL 5269457 (D. Hawai`i Oct. 24, 2012)).]  Plaintiffs state that, like the plaintiff in Gomes, they suffered actual losses from the increased cost of credit as a consequence of their damaged credit scores, restricted availability of credit, and foregone opportunities they could have realized on the equity available in their home.  [Id. at 20.]

Plaintiffs rebut Defendant's unclean hands argument by emphasizing that it was upon Defendant's instruction that Plaintiffs stopped making payments and became delinquent on their mortgage.  Plaintiffs argue that the delinquent remarks posted to their credit report were extended by the misrepresentations made by Defendant, and its subsequent negligence in processing Plaintiffs' HAMP applications and NPV results.  [Id. at 20-21 (citing Gomes, 2012 WL 5269457 at *2).]

Plaintiffs argue that Defendant is likewise not entitled to summary judgment as to the UDAP claim (Count II). Plaintiffs argue that Defendant made a series of

misrepresentations involving important information necessary for
Plaintiffs to make an informed determination about how to proceed
with alternate foreclosure-avoidance options.  These
misrepresentations included statements that Plaintiffs qualified
for a HAMP loan modification, that Plaintiffs would receive a
HAMP trial period plan agreement within 30-40 days, and that
Plaintiffs should stop making payments on their mortgage and
begin making payments under the HAMP trial period plan upon
receipt of the agreement. [Id. at 22.]  Further,
misrepresentations made by Defendant's representatives directly
affected Plaintiffs' ability to make informed decisions about the
viability of proceeding with a HAMP modification and precluded
Plaintiffs from considering other work-out options. [Id. at 23.]

Plaintiffs therefore urge the Court to deny the Motion.

## III. **Reply**

In its reply, Defendant argues that there are no
disputed issues of material fact: there is no dispute that
Plaintiffs stopped making mortgage payments in February 2010,
that Defendant has not recorded a Notice of Default against the
Property, that Plaintiffs submitted a written loan modification
application in March 2010, and that in July 2010 Defendant denied
the application under HAMP, but thereafter granted Plaintiff six
months of payment forbearance and offered Plaintiffs three loan
modifications, none of which Plaintiffs accepted. [Reply at 1-

2.]

Defendant states that it is undisputed that it never promised Plaintiffs a HAMP Trial Payment Plan followed by a permanent modification, and that Plaintiffs acknowledge that they were given no specific terms regarding an alleged HAMP Trial Payment Plan and never received any actual trial modification agreement.  [Id. at 2-3 (citing Plaintiffs' Resp. to Defendant's Concise Statement at ¶¶ 6, 10; Mem. in Opp. at 10).]  Even if there was evidence that it promised Plaintiffs a HAMP Trial Payment Plan, Defendant further asserts, Plaintiffs' claim must still fail because a HAMP Trial Payment Plan is subject to the Statute of Frauds, and no evidence of a writing exists.  As such, Defendant argues, it is undisputed that it did not promise Plaintiffs a HAMP Trial Payment Plan.  [Id. at 3.]

Defendant notes that Plaintiffs state that they did not accept Defendant's first loan modification offer in March 2011 because the monthly payments (lowered from $3,500 to less than $2,400) were still significantly higher than what Plaintiffs would have received under HAMP.  Defendant argues, however, that Plaintiffs had no entitlement to a HAMP modification.  [Id. at 5 (citing Kilaita v. Wells Fargo Home Mortg., 2011 WL 6153148, at *9 (N.D. Cal. Dec. 12, 2011)).]  Second, Plaintiffs have offered no citation to support the amount of Plaintiffs' monthly payment had they qualified for a HAMP modification.  [Id. at 6.]

10

Defendant reiterates the arguments in the Motion regarding a lack of duty, material misrepresentation, causation, and evidence of damages. [Id. at 6-14.] Defendant additionally argues that the Biakanja factors show that no duty was owed. [Id. at 8-9.].

## STANDARD

Summary judgment shall be granted if the evidence supporting the Motion shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment may carry its initial burden by pointing out to the district court that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party bears the burden of proof at trial, the moving party may carry its burden by showing an absence of evidence to support the non-moving party's case. Id. at 323.

To avoid summary judgment, the non-movant must set forth specific facts showing that there remains a genuine issue of material fact for trial. Id. at 324. The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading." A factual dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The evidence of the

11

non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor.  Id. at 255.  If the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Id. at 249–50.

## DISCUSSION

### I.  Negligence

Under Hawai`i law, in order to establish a negligence claim, Plaintiffs must demonstrate a duty, a breach of that duty, legal causation, and actual injury.  Takayama v. Kaiser Found. Hosp., 82 Hawai`i 486, 498–99, 923 P.2d 903, 915–16 (1996); Kaho`ohanohano v. Dep't of Human Servs., 117 Hawai`i 262, 287 n.31, 178 P.3d 538, 563 n.31 (2008); Pagano v. OneWest Bank, F.S.B., Civ. No. 11–00192 DAE–RLP, 2012 WL 74034, at *4 (D. Hawai`i Jan. 10, 2012).

This district court has frequently recognized the principle that lenders generally do not owe their borrowers a duty of care sounding in negligence.  See, e.g., McCarty v. GCP Mgmt., LLC, Civ. No. 10–00133 JMS–KSC, 2010 WL 4812763, at *6 (D. Hawai`i Nov. 17, 2010); see also Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991).  Further, this district court has recognized that a loan servicer does not owe a duty of care to a borrower in a loan it services, unless the loan servicer's activities exceed its

12

traditional role.  See, e.g., Vertido v. GMAC Mortg. Corp., Civ.
No. 11-00360 DAE-KSC, 2012 WL 139212, at *11 (D. Hawai`i Jan. 17,
2012) (citing Shepherd v. Am. Home Mortg. Servs., Inc., Civ. No.
2:09-1916 WBS GGH, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20,
2009)).

Plaintiffs acknowledge this general rule, but
nevertheless argue that special circumstances exist here that
give rise to a duty.  [Mem. in Opp. at 14.]  The Court need not
reach the issue, however, because, even assuming such a duty
existed, Plaintiffs' negligence claim must fail, as they have not
demonstrated breach, causation, or evidence of damages.  See
Pagano v. OneWest Bank, F.S.B., Civ. No. 11-00192 DAE-RLP, 2012
WL 74034, at *4 (D. Hawai`i Jan. 10, 2012) (even assuming a duty
exists, plaintiffs must also demonstrate causation to overcome
dismissal); Mitchell v. Branch, 45 Haw. 128, 131, 363 P.2d 969,
973 (1961) ("To impose liability on a negligent party for an
injury to another, there must be a causal connection between the
negligent act and the injury.  The mere co-existence of
negligence and injury, or the existence of negligence prior to
the injury, is not in itself sufficient to establish this
necessary causal relationship.") (citations omitted).

Plaintiffs' claim is based upon their allegation that
Defendant failed to timely process and provide them with a loan
modification and, as a result, they had a negative credit report

13

associated with their default.  [Compl. ¶¶ 127-128.]  Plaintiffs
have failed to demonstrate, however, that any breach occurred, as
Defendant provided Plaintiffs with three separate loan
modification offers, all of which Plaintiffs voluntarily
declined.  [See Defendant's Concise Statement, Beltran Decl.,
Exhs. 7 & 11, McHenry Decl., Exh. 14 at 143:21-144:16, 146:8-17,
Exh. 15; Plaintiffs' Resp. to Defendant's Concise Statement at
¶¶ 16, 18, 20-23.]  Because Plaintiffs themselves declined the
loan modification offers, the Court cannot see how Defendant is
the proximate cause of any alleged injury resulting from
Plaintiffs' inability to benefit from a loan modification.
Further, given the evidence that Defendant provided Plaintiffs
with three separate loan modification offers during a one-year
period, [see id.; Defendant's Concise Statement at ¶¶ 16-17, 20-
22,] Plaintiffs have failed to demonstrate that Defendant was
negligent in some way while processing Plaintiffs' loan
modification request.

Plaintiffs have also failed to sufficiently demonstrate
that the alleged actions by Defendant caused the injury for which
they seek to hold Defendant liable.  Plaintiffs admit that they
intentionally stopped making mortgage payments, and that they
refused the three loan modification offers made by Defendant.
[Plaintiffs' Resp. to Defendant's Concise Statement at ¶¶ 4, 16,
18, 20-23.]  Further, Plaintiffs have failed to show that they

14

have suffered any harm other than economic loss.  Hawai`i law requires a finding of actual loss or damage in a negligence claim.  <u>Takayama v. Kaiser Found. Hosp.</u>, 82 Hawai`i 486, 498-99, 923 P.2d 903, 915-16 (1996).  Plaintiffs argue in their memorandum in opposition that Defendant was the direct cause of harm to their credit scores and that they suffered damages as a result of that harm; however, they have offered no evidence other than self-serving statements to support such a claim.

As such, the Court GRANTS the Motion as to Count I.

**II.   <u>UDAP</u>**

As to Count II, Plaintiffs' UDAP claim, Defendant argues that this claim fails because Defendant did not make any misrepresentation to Plaintiffs.  The Court agrees.

Plaintiffs allege that Defendant deceived Plaintiffs into believing they would get a loan modification with the intention of keeping Plaintiffs' loan "in default and arrears for as long as possible before ultimately foreclosing to maximize its fees and the payments it can extract from Plaintiffs." [Complaint at ¶¶ 138, 140, 142.]  Plaintiffs argue that these acts constitute violations of Haw. Rev. Stat. § 480-2(a).

Section 480-2(a) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  "A practice is unfair when it 'offends established public policy and when the

15

practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  Long v. JP Morgan Chase Bank, N.A., 848 F. Supp. 2d 1166, 1179 (D. Hawai'i 2012) (quoting Balthazar v. Verizon Hawai'i, Inc., 109 Hawai'i 69, 123 P.3d 194, 202 (2005)).

     Hawai'i courts define a deceptive act or practice as "(1) a representation, omission, or practice [ ] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3)[ ] the representation, omission, or practice is material.  A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'"  Tokuhisa v. Cutter Management Co., 122 Hawai'i 181, 195, 223 P.3d 246, 260 (Hawai'i App. 2009) (citations omitted) (brackets in original).

     Plaintiffs claim that Defendant told them that the only way to qualify for a loan modification was to stop payments on their loan.  [Compl. at ¶ 24.]  As an initial matter, to the extent Plaintiffs are claiming that Defendant orally modified the loan agreement to allow Plaintiffs to withhold payments, such a claim is subject to the Statute of Frauds and thus requires a writing, which Plaintiffs do not allege exists.  See, e.g., Eckerle v. Deutsche Bank Nat'l Trust, Civ. No. 10-00474 SOM-BMK, 2011 WL 4971128, at *3-4 (D. Hawai'i Oct. 18, 2011).

Further, this Court has stated that lenders "are within their rights . . . to prioritize the processing of loan modification applications according to the needs of their borrowers." Lindsay v. Bank of America, N.A., Civ. No. 12-00277 LEK-BMK, 2012 WL 5198160, at *12 (D. Hawai`i Oct. 19, 2012). Lenders are "neither unfair nor deceptive in informing [borrowers] that their loan modification application would not be processed unless they remained in default on the Mortgage, which would eventually make Plaintiffs' application a higher priority for loan modification." Id. Plaintiffs' allegations regarding Defendant's alleged instruction to stop making payments are therefore insufficient for purposes of a UDAP claim. In any case, Plaintiffs do not dispute that they were in fact offered three loan modification options, all of which they rejected, nor do they offer any evidence suggesting that the terms of the proposed modifications were unreasonable. As such, Plaintiffs' allegations do not rise to the level of unfair or deceptive acts.

The Court therefore GRANTS Defendant's Motion as to Count II.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion For Summary Judgment Or In The Alternative Partial Summary Judgment, filed January 23, 2013, is HEREBY GRANTED. Plaintiffs' Complaint is HEREBY DISMISSED WITH PREJUDICE, and the Court directs the

Clerk's Office to close the instant case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 23, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

LAWRENCE CRILLEY AND MARY KOLTUN-CRILLEY V. BANK OF AMERICA,
N.A.; BACK HOME LOANS SERVICING, LP; CV 12-00081 LEK-BMK; ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT